UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TINA HIBBARD,

          Plaintiff,                                     Hon. Ellen S. Carmody

v.

                                           Case No. 1:12-cv-1216

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On March 20, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #12).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## PROCEDURAL POSTURE

Plaintiff was 33 years of age on her alleged disability onset date. (Tr. 134-45). She successfully completed high school and previously worked as a cashier, cook, laundry attendant, and nursing home aide. (Tr. 24).

Plaintiff applied for benefits on September 25, 2008, alleging that she had been disabled since January 1, 2007, due to depression, obesity, and high blood pressure. (Tr. 134-45, 198). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 77-133). On November 9, 2010, Plaintiff appeared before ALJ Donna Grit with testimony being presented by Plaintiff and a vocational expert. (Tr. 34-76). In a written decision dated November 22, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 17-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2011. (Tr. 19). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**RELEVANT MEDICAL HISTORY**

On April 11, 2005, Plaintiff was admitted to the hospital because she was "depressed and suicidal." (Tr. 265-68). Plaintiff was diagnosed with major depressive disorder, recurrent, severe without psychotic features. (Tr. 268). Plaintiff responded to treatment and was discharged two days later at which point her GAF score was rated as 58.[1] (Tr. 270-71).

On July 15, 2005, Plaintiff was admitted to the hospital because "she has been increasingly depressed, feeling quite hopeless, helpless, down in the dumps." (Tr. 289). Plaintiff reported that she was experiencing "major stressors" in her life such as marital problems, the recent death of her father, and "some stress at her job." (Tr. 289). Plaintiff's medication regimen was modified after which her "mood stabilized" and her "depression decreased." (Tr. 290-94). Plaintiff was discharged from the hospital in "stable" condition on July 19, 2005. (Tr. 294-95). Treatment notes dated September 27, 2005, indicate that Plaintiff's GAF score was 60. (Tr. 298).

Treatment notes dated August 22, 2008, indicate that Plaintiff "is oriented, cooperative, non-psychotic, but definitely depressed." (Tr. 455). Plaintiff's medication regimen was modified. (Tr. 455). Treatment notes dated September 12, 2008, indicate that Plaintiff was "more pleasant and focused." (Tr. 454).

Treatment notes dated June 2, 2009, indicate that Plaintiff was "struggling with increasing depression." (Tr. 637). Plaintiff also reported, however, that she "has been off [her] medications for a few months." (Tr. 637). Treatment notes dated July 31, 2009, indicate that Plaintiff was taking her prescribed medication and "doing better." (Tr. 628).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 58 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

On January 19, 2010, Plaintiff was examined by social worker Vicki Makley. (Tr. 502-07). Plaintiff reported she was experiencing "depression, isolation, anxiety, and difficulty managing the relationships in her life." (Tr. 502). Plaintiff reported that she was "currently separated from her husband of 10 years," but was "in a new relationship with another man and [also] having an affair with her cousin." (Tr. 504). Plaintiff reported experiencing "guilt, shame and remorse for her choices, which exacerbates her depression." (Tr. 504). Plaintiff conceded that she was "not making healthy choices" and, moreover, was "smoking marijuana daily and binge drinking." (Tr. 504). Plaintiff exhibited "a restricted affect and anxious mood," but otherwise the results of a mental status examination were unremarkable. (Tr. 506). The social worker observed that Plaintiff "has insight into her depression and anxiety, but has difficulty making healthy decisions to improve her mental health." (Tr. 505).

Treatment notes dated February 9, 2010, indicate that Plaintiff was taking her prescribed medications and "feeling less stressed, and more relaxed." (Tr. 515). Social Worker Makley observed that Plaintiff "presented with a brighter affect and mood, and reported feeling better and having more motivation to be out of the house." (Tr. 516). Plaintiff reported that she was "getting out to social functions more often" and "felt good about the progress she has made to this point." (Tr. 516).

Treatment notes dated February 24, 2010, indicate that Plaintiff was no longer smoking marijuana or drinking alcohol. (Tr. 517). Plaintiff reported that she "was taking her medications and feeling a benefit from them." (Tr. 518). Plaintiff also reported that she "was not as depressed or struggling as she had been." (Tr. 518).

Treatment notes dated March 11, 2010, indicate that while Plaintiff continued to not

smoke marijuana she was "drinking alcohol more often." (Tr. 519). Plaintiff exhibited "a flat affect and dysphoric mood." (Tr. 520). Plaintiff also reported that she was experiencing difficulty with her various interpersonal relationships. (Tr. 520).

Treatment notes dated March 23, 2010, indicate that Plaintiff was "not making progress." (Tr. 521). Plaintiff reported that she was "taking all medications as prescribed," but was also "using marijuana and drinking alcohol routinely." (Tr. 521). Treatment notes dated March 31, 2010, indicate that Plaintiff was "feeling worse, having suicidal ideation with increased use of alcohol, drugs and sex." (Tr. 523).

On June 24, 2010, Plaintiff was admitted to the hospital after experiencing "worsening depressive symptoms." (Tr. 645-48). Plaintiff reported that "she does smoke marijuana regularly" which doctors observed "could be contributing to her psychosis and depressive symptoms." (Tr. 646-47). Plaintiff's medication regiment was modified after which her condition stabilized. (Tr. 643-48). Plaintiff was discharged from the hospital on June 28, 2010. (Tr. 643).

On November 3, 2010, Social Worker Makley was questioned under oath by Plaintiff's attorney. (Tr. 655-69). Makley reported that Plaintiff was unable to work full time, but also noted that Plaintiff possessed a "lack of motivation" to return to work. (Tr. 659, 661).

According to Makley, Plaintiff could "possibly" understand, remember, and carry out simple job instructions, experienced "some limitations" with respect to understanding, remembering, and carrying out detailed job instructions, and possessed "no useful ability" to understand, remember, and carry out complex job instructions. (Tr. 662). Makley reported that Plaintiff was unable to "demonstrate reliability" with respect to the ability to "get to work every day, five days per week and stay there." (Tr. 662-63). Makley reported that Plaintiff would "miss three or more days

6

per month" of work because of her emotional impairments. (Tr. 663). Makley reported that Plaintiff was not able to even work "2 or 3 hours a couple times a week." (Tr. 663).

According to Makley, Plaintiff possessed "no ability" to "relate predictably in social situations, such as one would encounter in the work place." (Tr. 664). Makley reported that Plaintiff lacks the ability to function independently in the work place and "would need some pretty intense supervision." (Tr. 665). Makley reported that Plaintiff "would have a hard time communicating her thoughts and needs" and, therefore, would have a difficult time interacting with supervisors. (Tr. 665).

Makley reported that Plaintiff's "ability to use judgment in the work place" was "impaired." (Tr. 665). Makley reported that Plaintiff possesses no ability to deal with the public or relate to coworkers in a work situation. (Tr. 666). Makley reported that Plaintiff was "quite impaired" with respect to her ability to follow work rules. (Tr. 666). Makley reported that "at least one or two times per week" Plaintiff is unable to "get out of bed" or function at all. (Tr. 667). Makley was unsure of the impact that Plaintiff's marijuana and alcohol usage had on her symptoms and treatment. (Tr. 667-68).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from obesity, bi-polar disorder, and major depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19-21). With respect to

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can perform less than frequent balancing, stooping, kneeling, crawling, crouching, and climbing stairs/ramps; (2) she cannot climb ladders, ropes, or scaffolds; (3) she can understand, remember, and perform one and two-step tasks on a sustained basis; and (4) she can have less than frequent contact with co-workers. (Tr. 21).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Susan Rowe.

The vocational expert testified that there existed approximately 17,800 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 69-73). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar.

1, 2006).  The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

## I.        The ALJ Properly Evaluated the Social Workers' Opinions

### A.        Social Worker Vicki Makley

As previously noted, Social Worker Vicki Makley opined that Plaintiff's ability to function was severely limited rendering her unable to perform work activities.  The ALJ afforded "very little weight" to Makley's opinion.  Plaintiff argues that she is entitled to relief because the ALJ failed to articulate good reasons for discounting Makley's opinion.

The requirement that an ALJ articulate "good reasons" for affording less than controlling weight to a care provider's opinion only applies to opinions rendered by acceptable medical sources.  *See, e.g., Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007).  Moreover, only acceptable medical sources can offer medical opinions.  *See*, *e.g.*, 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2).  In this context, a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2).  A nurse practitioner, however, is not considered an acceptable medical source.  *See* 20 C.F.R. §§ 404.1502; 404.1513(a); *Dykes v. Colvin*, 2014 WL 585319 at *3 (W.D. Ky., Feb. 13, 2014).

Nevertheless, nurse practitioners and other unacceptable medical sources, are permitted to offer statements regarding "the severity of [a claimant's] impairment(s) and how [such] affects [her] ability to work."  *See*, *e.g.*, 20 C.F.R. §§ 404.1513(d); 416.913(d).  When evaluating a

10

statement from an unacceptable medical source, the ALJ is not required to assess such pursuant to any particular factors or benchmarks. *See*, *e.g.*, *Gayheart*, 710 F.3d at 378 ("[t]he factors set forth in 20 C.F.R. § 404.1527. . .apply only to medical opinions from acceptable medical sources"). Instead, the ALJ is required simply to "consider" statements from unacceptable medical sources. *See*, *e.g.*, *Gayheart*, 710 F.3d at 378 (quoting Social Security Ruling 06-03P, 2006 WL 2329939 at *4 (S.S.A., Aug. 9, 2006)).

The ALJ considered Makley's opinion and articulated several reasons for affording it little weight. As the ALJ stated:

> There is no mental assessment from a treating psychiatrist. However, on November 3, 2010, therapist, Vicky Makley, stated that claimant's psychological symptoms would cause interruptions in her abilities to get work and stay there on a regular basis. At this point in treatment, it would be pretty stressful for her to work two or three hours, two times a week. This single opinion is not supported by the evidence. Ms. Makley recommended having claimant's sister present during the hearing because her judgment is impair[ed and] she may have trouble testifying. However, claimant demonstrated the ability to testify clearly. She had good recall of almost all the details of her life and conditions when asked, without the presence of her sister at the hearing. Ms. Makley opined claimant's judgment is impaired to the point she could only work in a sheltered workshop, even if she were able to get up and out of the house on a regular basis. This statement is not consistent with claimant's treating psychiatrist who assigned GAF scores of 55, indicating moderate difficulty in social, occupational, or school functioning (Ex 34F/2/8). Therefore, the opinions [expressed by Makley] are given very little weight.

(Tr. 23).

The ALJ's assessment in this regard is supported by substantial evidence and satisfies the aforementioned standard. Accordingly, this argument is rejected.

B.      Social Worker Marissa Ripmaster

On November 16, 2009, Ripmaster completed a "Supplemental Case Management Form" regarding Plaintiff's treatment. (Tr. 621-22). One aspect of the form concerned the "extent of functional limitation" Plaintiff experienced in the following areas: (1) "ADLs"; (2) "Social"; (3) "Concentration"; and (4) "Adaptability." (Tr. 621). According to Ripmaster, Plaintiff experiences "mild" limitations with respect to "ADLs" and "marked" limitations in the remaining three areas. The ALJ afforded "no weight" to this particular form. Plaintiff argues that she is entitled to relief because the ALJ failed to articulate sufficient reasons for the weight he afforded Ripmaster's opinion. The Court is not persuaded.

As noted above, unacceptable medical sources such as social workers are not permitted to offer medical opinions, but instead are limited to offering statements regarding "the severity of [a claimant's] impairment(s) and how [such] affects [her] ability to work." Moreover, when evaluating a statement from an unacceptable medical source, the ALJ is not required to assess such pursuant to any particular factors, but is instead merely required to "consider" such statements.

With respect to the subject areas of functioning, Ripmaster merely selected the box which represents a "marked" level of impairment. The form in question, however, fails to define "marked" or provide any context from which such can be inferred. Likewise, the categories of functioning identified on the form ("social," "concentration," and "adaptability") are similarly ill-defined. Simply stated, the areas of functioning and the degrees of functional limitation identified on the form are so vague and undefined as to be meaningless. Ripmaster's act of completing the form in question simply fails to articulate a meaningful statement regarding the severity of Plaintiff's impairments and how such impacts her ability to perform work activities. The ALJ nevertheless

12

considered the form that Ripmaster completed and the ALJ's decision to afford no weight to such is supported by substantial evidence and consistent with the aforementioned standard. Accordingly, this argument is rejected.

II.          **The ALJ Properly Assessed Dr. Munir's GAF Score**

On July 31, 2009, Dr. Munir, one of Plaintiff's treating sources, reported Plaintiff's GAF score as 45. (Tr. 628). The ALJ noted that "a GAF score of 45 indicating major impairment in several areas. . .appears to be inconsistent with the description of [Plaintiff's] level of functioning." (Tr. 23). Plaintiff asserts that she is entitled to relief because the ALJ failed to provide a good reason for rejecting the doctor's GAF score. Plaintiff's argument is misplaced.

GAF scores do not constitute medical opinions. While the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984), the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir., Feb. 9, 2006) (citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002)). This argument is, therefore, rejected.

III.         **The ALJ Properly Discounted Plaintiff's Subjective Allegations**

Plaintiff testified at the administrative hearing that she was impaired to an extent far greater than recognized by the ALJ. For example, Plaintiff testified that three days a week she is unable to even get out of bed. (Tr. 54-55). Plaintiff testified that she lacks the energy to perform any household chores. (Tr. 55). Plaintiff testified that she lacks sufficient concentration to even read

13

a newspaper. (Tr. 58). Plaintiff also testified that during the day she just "sit[s] and stare[s] out the window" because she "don't want anybody to come get me." (Tr. 58-59). The ALJ found Plaintiff less than credible and discounted her subjective allegations. Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

As the ALJ recognized, Plaintiff's testimony is inconsistent with the medical evidence, including the evidence that when Plaintiff refrains from substance abuse and takes her medications as instructed she is capable of a level of functioning consistent with the ALJ's RFC determination. Plaintiff's testimony is also inconsistent with her reported activities. As the ALJ further observed, the record contains evidence that Plaintiff has been non-complaint with the instructions of her care providers. In sum, the ALJ's decision to accord limited weight to Plaintiff's

subjective allegations is supported by substantial evidence.


**IV.**          **The ALJ Properly Evaluated the Report by Plaintiff's Sister**

On October 20, 2008, Plaintiff's sister, Nina Colvin, completed a report concerning

Plaintiff's activities. (Tr. 207-14). According to Colvin, Plaintiff remains in bed every day and lacks

the desire and energy to perform even the most basic activities. (Tr. 207-14). Plaintiff argues that

the ALJ improperly "ignored" the contents of this report. To the contrary, the ALJ specifically

referenced this report. (Tr. 21). Moreover, to the extent that Colvin reported that Plaintiff was

impaired to an extent beyond that recognized by the ALJ, such was properly discounted for the same

reasons articulated above. Accordingly, this argument is rejected.


## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is

supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A

judgment consistent with this opinion will enter.



Date:  March 27, 2014                      /s/ Ellen S. Carmody
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge


16